UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-10989-GAO

RAVI MUKTHINENI,
Plaintiff,

v.

MURAHARI RAO PALADUGU, NAVEENA LAKSHMI PALADUGU, and AKSHITA
PROPERTIES, LLC,
Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION
June 8, 2017

O'TOOLE, D.J.

The magistrate judge to whom this matter was referred has filed a report and recommendation (dkt. no. 27) ("R&R") with respect to the defendants' motion to dismiss Count II (as to defendants Naveena Lakshmi Paladugu and Akshita Properties, LLC), III, IV, V (as to defendants Naveena Lakshmi Paladugu and Akshita Properties, LLC), IX, and X of the plaintiff's Complaint. No objections to the R&R have been filed.

After carefully reviewing the pleadings, the parties' motion papers, and the R&R, I ADOPT the recommendation of the magistrate judge. The defendants' Partial Motion to Dismiss (dkt. no. 22) is GRANTED to the extent that Count III is dismissed as to Naveena Lakshmi Paladugu, Count IV is dismissed in its entirety, and Count V is dismissed as to Naveena Lakshmi Paladugu and Akshita Properties, LLC. The motion is otherwise DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

RAVI MUKTHINENI,
    Plaintiff,


    v.                                          CIVIL ACTION NO. 16-10989-GAO



MURAHARI RAO PALADUGU,
NAVEENA LAKSHMI PALADUGU,
and AKSHITA PROPERTIES, LLC,
    Defendants.



REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (#22).


KELLEY, U.S.M.J.

I. <u>Introduction</u>.

On May 31, 2016, plaintiff Ravi Mukthineni filed an eleven count complaint (#1) against

defendants Murahari Rao Paladugu, Naveena Lakshmi Paladugu,[1] and Akshita Properties, LLC[2]

(Akshita). This action, which consists of claims for breach of contract (Counts I and VII), breach

of implied contract (Counts II and VIII), unjust enrichment (Counts III and IX), conversion

(Counts IV and X), equitable estoppel (Counts V and XI), and breach of fiduciary duty (Count

VI), stems from a business venture and loan agreement gone awry. Defendants moved to dismiss

---

[1] Because defendants Murahari Rao Paladugu and Naveena Lakshmi Paladugu share the same last name
and the complaint identifies them as husband and wife, (*see* #1 ¶ 5), the court will refer to them as Mr.
and Ms. Paladugu.

[2] Akshita is comprised of two members, Mr. and Ms. Paladugu. (#26.)

Counts II (as to Ms. Paladugu and Akshita), III (in its entirety), IV (in its entirety), V (as to Ms. Paladugu and Akshita), IX (in its entirety), and X (in its entirety);[3] and plaintiff responded in opposition (#16).

## II. The Facts.

### A. The Partnership.

The facts as set forth in the complaint are as follows. Around May 3, 2013, plaintiff and Mr. Paladugu entered into a partnership agreement (the Agreement) (#1-3 at 2-4) with the intention to open a cigar lounge and café called "The Royale," to be located at 297 Georgesville Road in Columbus, Ohio. (#1 ¶¶ 8, 9; #1-3 at 2-4.) The record owner of 297 Georgesville Road is Akshita. *Id.* ¶ 10.

Around May 9, 2013, plaintiff transferred via bank wire $150,000.00 to Akshita in connection with the business venture. *Id.* ¶ 13. Pursuant to the Agreement, plaintiff and Mr. Paladugu were each to have a 50% ownership interest in The Royale, and the business was to be managed by Mr. Paladugu. *Id.* ¶¶ 12, 14; (#1-3 at 2-3.) On June 24, 2013 and again on August 16, 2013, plaintiff received from Mr. Paladugu emails regarding interior and exterior renovation and design of The Royale.[4] (#1 ¶¶ 15, 16.)

Over the next twelve months, plaintiff repeatedly called and sent messages to Mr. Paladugu inquiring as to the status of the business venture. *Id.* ¶ 17. Mr. Paladugu orally promised to repay, with 18% interest, all funds tendered by plaintiff in connection with the

---

[3] Docket entry #7 is the memorandum in support of defendants' motion to dismiss. Defendants failed to file their actual motion to dismiss at the time they submitted their memorandum in support. As a result, the court struck #7 to the extent that it was designated as a motion, corrected the docket to accurately reflect #7's true purpose, and ordered defendants to file the requisite motion to dismiss. (*See* #20.) The motion appears as #22 on the docket.

[4] The first of these emails, attached to the complaint as Exhibit C, was sent to plaintiff and to Ms. Paladugu. (#1-3 at 13.)

Agreement. *Id.* ¶ 18. Around January 2014, defendants made a payment of $4,500.00 in an effort to reimburse plaintiff for his contribution to the business venture under the Agreement. *Id.* ¶ 19. Around February 2014, defendants made an additional payment of $4,500.00 for the same purpose.[5] *Id.* ¶ 20.

At the time this suit was filed, plaintiff had not been paid the $150,000.00 debt owed by Mr. Paladugu as a result of the Agreement, and plaintiff was unaware of the status of The Royale's existence. *Id.* ¶¶ 21, 22.

## B. The Loan.

Around June 29, 2013, plaintiff and Mr. Paladugu entered into a loan agreement (the Loan) (#1-3 at 10-11), separate from the above-described partnership agreement. *Id.* ¶ 24; (#1-3 at 10-11.) Pursuant to the Loan, plaintiff agreed to lend Mr. Paladugu $150,000.00 at an interest rate of 18% per year that was to be repaid in full, via monthly installments, by July 2014. (#1 ¶¶ 25, 28; #1-3 at 10-11.)

Around July 2013, Mr. Paladugu paid $2,250.00 toward the interest on the Loan. (#1 ¶ 29.) Around January 2014 and again around February 2014, defendants made two payments of $4,500.00 towards the balance of the Loan.[6] *Id.* ¶¶ 30, 31. "Thereafter, a check for the sum of $4,500.00 was returned for insufficient funds."[7] *Id.* ¶ 32.

---

[5] The complaint fails to identify the specific defendants responsible for these payments. (*See* #1 ¶¶ 19, 20.)

[6] From all that can be gleaned from the complaint, these payments appear to be the same two payments referenced in the preceding section. (*See* #1 ¶¶ 19, 20, 30, 31 (stating that "defendants made a payment of $4,500.00 towards a refund of the Partnership Agreement, *and* towards the outstanding Loan Agreement.") (emphasis added).) Plaintiff again fails to identify the specific defendants who made these payments. (*See id.* ¶¶ 30, 31.)

[7] While the two $4,500.00 payments appear to be the same with respect to the Agreement and the Loan, there is no mention of any checks being returned in the factual allegations that pertain to the partnership. *See id.* ¶¶ 8-23.

At the time this action was initiated, plaintiff had not been repaid the debt owed under the Loan or his investment made pursuant to the Agreement. *Id.* ¶ 33. Plaintiff has demanded repayment of all funds. *Id.* ¶ 36. Specifically, around May 20, 2015, plaintiff sent an email to Mr. and Ms. Paladugu (#1-3 at 17-18), in which he itemized the amounts owed and sought to recoup his money. *Id.* ¶¶ 36-39.

III. <u>Standard of Review</u>.

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

## IV. Discussion.

### A. Partnership Agreement.

With respect to the claims brought in connection with the Agreement, defendants move to dismiss Count II, breach of implied contract, as to Ms. Paladugu and Akshita; Count III, unjust enrichment, as to all defendants; Count IV, conversion, as to all defendants; and Count V, equitable estoppel, as to Ms. Paladugu and Akshita.

The Agreement contains a choice of law provision that mandates application of Ohio law, (*see* #1-3 at 3 ¶ 14), and the parties do not contest that Ohio law applies to claims pertaining to the Agreement. (*See* ##7, 16 (applying Ohio law).)

### 1. Breach of Implied Contract – Count II.

Plaintiff alleges that Ms. Paladugu and Akshita are bound by an implied contract to repay the funds he tendered under the Agreement. Under Ohio law, mutual assent in the context of an implied-in-fact contract is shown not by an express offer and acceptance, "but by 'the surrounding circumstances, including the conduct and declarations of the parties.' Those circumstances must 'make it inferable that the contract exists as a matter of tacit understanding.'" *GEM Indus., Inc. v. Sun Trust Bank,* 700 F. Supp. 2d 915, 922 (N.D. Ohio 2010) (quoting *Stepp v. Freeman,* 119 Ohio App. 3d 68, 74, 694 N.E.2d 510 (1997)); *see also Legros v. Tarr*, 44 Ohio St. 3d 1, 6–7 (1989).

This matter is an extremely close call and turns on the allegation that "the defendants" made certain payments to plaintiff in an effort to repay him. (*See* #1 ¶¶ 19, 20.) Taking the facts alleged in a light most favorable to Mr. Mukthineni, which must be done at this stage, if Ms. Paladugu and Akshita made these payments with the intention of repaying the debt owed, then plaintiff's breach of implied contract claim has merit. That said, an email attached to the complaint, (#1-3 at 17-18), in which plaintiff itemizes the debts he is allegedly owed, cuts against the inference that there was a meeting of the minds between Mr. Mukthineni and the moving defendants. Specifically, the email, entitled "Spreadsheet with the details of money owed by Murali[8] to me," seems to show that plaintiff was under the impression, as of May 20, 2015, that Mr. Paladugu would remunerate the funds owed. (*See* #1-3 at 17 ("I loaned my daughter's college savings . . . with the expectation that Murali will be paying back the amount"); 18 (labeling the debt owed as "Total Money Owed to me by Murali").) In *Gem Indus., Inc.*, the court found such conduct – demanding payment from other individuals – to be of substantial import in deciding whether the relevant circumstances illustrated the existence of an implied contract. *See Gem Indus., Inc.*, 700 F. Supp. 2d at 922-923. While the *Gem Indus., Inc.* court was confronted with this question at the summary judgment stage and found a complete absence of evidence to support an implied-in-fact contract, the May 20, 2015 email is enough to give the court pause.[9] However, the court will not speculate as to the potential existence of evidence in

---

[8] It appears that "Murali" is an identifier for Mr. Paladugu.

[9] Mr. Mukthineni's proffer of the email in which a rendering of The Royale was sent from Mr. Paladugu to plaintiff and Ms. Paladugu (#1-3 at 13) in support of his position is a red herring. While plaintiff asserts that this email "demonstrates [Ms. Paladugu's] intimate involvement in [Mr. Paladugu's] machination," (#16 at 9), it has no relation to or bearing on the separate, later-formed implied contract to repay.

support of or against this claim and leaves it to the parties to ferret out these issues through the discovery process.

In sum, plaintiff has, by the thinnest of margins, pled adequately his claim for breach of implied contract such that Count II should survive the motion to dismiss. For these reasons, defendants' motion should be denied as to Count II.

### 2. Unjust Enrichment – Count III.

All defendants move to dismiss plaintiff's claim for unjust enrichment brought in connection with the Agreement for failure to state a claim. (#7 at 2.) Unlike the preceding count, which pertained to a separate implied contract, Count III alleges that defendants violated the terms of the Agreement when they failed to invest properly the funds contributed by plaintiff. (*See* #1 ¶¶ 53-58.)

> Unjust enrichment occurs when a party retains money or benefits which in justice and equity belong to another. Under the doctrine of unjust enrichment (i.e., quantum meruit), a party may recover the reasonable value of services rendered *in the absence of an express contract* if denying such recovery would unjustly enrich the opposing party.

*HAD Ents. v. Galloway*, 192 Ohio App. 3d 133, 139 (4th Dist. 2011) (emphasis added).

As the *Galloway* court makes clear, under Ohio law, a plaintiff may not bring a claim for unjust enrichment where there exists an express contract that controls the terms of the parties' agreement.[10] In defendants' view, this should end the court's inquiry and Count III should be dismissed because the Agreement is an express contract, governed by Ohio law, that dictates how plaintiff's investment was to be allocated, and therefore precludes his claim in equity.

---

[10] Plaintiff states as much in his opposition. (*See* #16 at 6 ("Ohio law prevents a claim for unjust enrichment 'when an express contract is involved.'") (internal citation omitted).)

However, while it is undisputed that Ohio law controls all matters relating to the Agreement, the court cannot ignore Rule 8, Fed. R. Civ. P., which permits a plaintiff to plead alternative, competing, and even inconsistent claims. Where a court, sitting in diversity, is faced with a conflict between the applicable substantive state law and a Federal Rule of Civil Procedure, the Supreme Court dictates application of the Federal Rule. *See Hanna v. Plumer*, 380 U.S. 460, 471 (1965) ("When a situation is covered by one of the Federal Rules, . . . the court has been instructed to apply the Federal Rule"). Thus, applying Rule 8 and understanding that the validity of the Agreement is vulnerable to attack by defendants, plaintiff is entitled to plead his claim for unjust enrichment alongside his claim for breach of contract, even though both pertain to the same set of facts, and Count III should not be dismissed for this reason. *See Solo v. United Parcel Service Co.,* 819 F.3d 788, 796 (6th Cir. 2016) (applying Michigan law, which like Ohio law precludes a plaintiff from asserting a claim of unjust enrichment when there exists an express contract, the court found that, at the motion to dismiss stage, it was premature to conclude that the validity of the contract would not be contested in later stages of case); *Lass v. Bank of America, N.A*., 695 F.3d 129, 140-141 (1st Cir. 2012) (applying Massachusetts law, which like Ohio law provides that damages for breach of contract and unjust enrichment are mutually exclusive, the court found that "it is accepted practice to pursue both theories at the pleading stage," citing Fed. R. Civ. P. 8(d)); *see also Viera v. First American Tile Ins. Co*., 668 F. Supp. 2d 282, 295 (D. Mass. 2009) (collecting cases).

While plaintiff has cleared this initial hurdle, he must still make a *prima facie* showing of his claim for unjust enrichment as to each defendant. "To recover on a claim of unjust enrichment, a party must show: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant

under circumstances where it would be unjust to do so without payment." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d 942, 951 (N.D. Ohio 2009), *as amended* (Nov. 4, 2009) (internal citation and quotation marks omitted).

Plaintiff has met his burden with respect to Akshita. The first element is satisfied by the allegation that Akshita received the funds. (*See* #1 ¶ 13.) With respect to the second and third elements, the fact that Akshita's only members are Mr. and Ms. Paladugu is important. "Unjust enrichment requires [plaintiff] to allege that [Akshita] knew that [Akshita] was receiving a benefit that [Akshita] was not entitled to receive." *MMK Grp., LLC v. SheShells Co., LLC*, 591 F. Supp. 2d 944, 965 (N.D. Ohio 2008). Possession of plaintiff's investment became unjust at the point when Mr. Paladugu failed to allocate the funds as promised in the Agreement. As Mr. Paladugu makes up half of Akshita's membership, his knowledge can be imputed to Akshita. Taking the facts alleged in a light most favorable to plaintiff, it is reasonable to infer that Akshita was still in possession of some portion of the money at the point where Mr. Paladugu failed to abide by the Agreement and that Akshita, through Mr. Paladugu, had knowledge of this. For these reasons, Count III should not be dismissed as to Akshita.

Turning to Ms. Paladugu, the $150,000.00 was transferred to Akshita with the expectation that Mr. Paladugu would manage properly the funds as part of his effort to create and open The Royale. Thus, the complaint fails to connect Ms. Paladugu to plaintiff's investment such that she is exposed to liability under a theory of unjust enrichment.[11] Count III should be dismissed as to Ms. Paladugu.

---

[11] While plaintiff makes a viable claim for unjust enrichment as to Akshita, the allegation that Ms. Paladugu owns Akshita (*see* #1 ¶¶ 6, 11) is insufficient to expose her to liability in her individual capacity for actions taken by Akshita, without piercing the corporate veil.

The principle that shareholders, officers, and directors of a corporation are generally not liable for the debts of the corporation is ingrained in Ohio law. *See* Section

As for Mr. Paladugu, it can be reasonably inferred from the complaint that Mr. Paladugu was in possession of some portion of the investment at the point at which he allegedly failed to properly invest the funds. Thus, based on the allegations in the complaint, Mr. Paladugu received a benefit from plaintiff; had knowledge of this benefit; and retained the funds in circumstances where it was inappropriate to do so. As a result, Count III should not be dismissed as to Mr. Paladugu.

---

3, Article XIII, Ohio Constitution; *Belvedere* [*Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*]*,* 67 Ohio St.3d [274,] 287, 617 N.E.2d 1075, citing Presser, Piercing the Corporate Veil (1991) 1–4. The corporate form is useful primarily because it creates a division between shareholders and their business concerns: "[The corporate form] has been introduced for the convenience of the company in making contracts, in acquiring property for corporate purposes, in suing and being sued, and to preserve the limited liability of the stockholders, by distinguishing between the corporate debts and property of the company, and of the stockholders in their capacity as individuals." *State ex rel. Atty. Gen. v. Std. Oil Co.* (1892), 49 Ohio St. 137, 177, 30 N.E. 279.

However, shareholders are not absolutely immune from liability for the actions of their corporations. "[L]ike every other fiction of the law, when urged to an intent and purpose not within its reason and policy, [the corporate form] may be disregarded." *State ex rel. Atty. Gen.* at paragraph one of the syllabus. Shareholders may thus be held liable for their own bad acts notwithstanding the protections afforded by the corporate form when they use the corporation "for criminal or fraudulent purposes" to the detriment of a third party. *Belvedere,* 67 Ohio St.3d at 287, 289, 617 N.E.2d 1075. Piercing the corporate veil in this manner remains a "rare exception," to be applied only "in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson* (2003), 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643.

*Dombroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506, 510–11, 895 N.E.2d 538, 542–43 (2008) (some alteration in original). The corporate veil may be pierced when

(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Id.* at 511.

For the above reasons, defendants' motion with respect to Count III should be allowed as to Ms. Paladugu and denied as to Akshita and Mr. Paladugu.

3. <u>Conversion – Count IV</u>.

All defendants move to dismiss plaintiff's claim for conversion as it pertains to the funds invested under the Agreement. Under Ohio law, "[c]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 768 (N.D. Ohio 2013) (internal citation and quotation marks omitted). To make out a claim, a plaintiff must demonstrate: (1) an ownership or right to possess the property at the time of conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiff's property; and (3) damages. *Id.* A conversion claim with regard to money carries specific requirements:

> Money may be the subject of a conversion claim only if identification is possible and there is an obligation to deliver, not just a certain sum of money, but rather the specific money in question. Thus, [c]onversion of money occurs only when the money is specifically earmarked, or capable of identification such as money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered.

> An action will not lie for the conversion of a mere debt, and where there is only a relationship of a debtor and creditor, not an obligation to return identical money, an action for conversion of the funds representing the indebtedness will not lie against the debtor.

*Id.* (alteration in original) (internal citation and quotation marks omitted).

Plaintiff fails to plead sufficiently his claim for conversion with regard to the funds invested under the Agreement because he has not alleged that the converted funds were identifiable, either as originally invested in the partnership or after they were allegedly misappropriated. *See*, *e.g.*, *id.* at 769 (noting the deficiencies in the plaintiff's claim for conversion, the court stated: "[the plaintiff] does not allege, for example, that the converted

funds were in a special or segregated account, as opposed to being dispersed from the pool of

Plan assets in the Trustee's possession."). In addition, plaintiff's claim for conversion of money

invested pursuant to the Agreement fails due to plaintiff's failure to allege that he is owed

specific money as opposed to a sum certain, i.e., removing him from the role of a simple creditor

and giving life to his claim for conversion. Thus, plaintiff's claim for conversion of funds

invested under the Agreement, Count IV, is facially deficient and should be dismissed in its

entirety.

### 4. Equitable Estoppel – Count V.

Defendants Ms. Paladugu and Akshita move to dismiss plaintiff's claim for equitable

estoppel relating to the Agreement. The complaint is not clear with respect to this count. The

complaint asserts that plaintiff reasonably relied on Mr. Paladugu's representations regarding: (1)

Mr. Paladugu's promise to invest properly the funds under the Agreement and (2) his subsequent

oral promise to repay the funds. (*See* #1 ¶¶ 63, 64.) The complaint further states that "Plaintiff, to

his detriment, provided funds in the amount of $150,000.00 for the Defendants' benefit . . . ." *Id.*

¶ 65. Plaintiff, however, could not have relied on Mr. Paladugu's promise to repay plaintiff's

investment when plaintiff made his initial investment. The relationship began when plaintiff and

Mr. Paladugu established the partnership via the Agreement; then, plaintiff made his

$150,000.00 investment; eventually, the partnership soured; and Mr. Paladugu *then* promised to

repay plaintiff's investment. Thus, the promise to repay had not been made at the time plaintiff

invested in the partnership, and therefore could not have been relied upon as a misrepresentation

that resulted in a detriment to plaintiff.

Setting aside this apparent factual inconsistency, the elements of a viable equitable

estoppel claim under Ohio law have been described as follows:

First, there must be something in the nature of a representation by words, acts, or silence. The representation must be factual, not promissory, or else the elements and analysis appropriate to a promissory estoppel context may apply. The facts underlying the representation must be known to the party at the time he makes it, or at least the circumstances must be such that he is necessarily chargeable with knowledge of them. In addition, if silence is involved, it amounts to a representation only if the circumstances were such that the law recognized a duty to speak. Second, the representation must communicate some fact or state of affairs in a misleading way. Third, the representation must induce actual reliance by the second party, and such reliance must be reasonable under the circumstances and made in good faith. Fourth, the relying party would suffer prejudice or pecuniary disadvantage if the party whose representation was relied upon were not estopped or precluded from asserting an otherwise valid right in contradiction to his earlier representation.

*First Fed. Sav. & Loan Ass'n of Toledo v. Perry's Landing, Inc.*, 11 Ohio App. 3d 135, 145 (6th Dist. 1983) (emphasis omitted).

Here, plaintiff's claim is more akin to one of promissory estoppel given that his claim is, at bottom, premised on Mr. Paladugu's promises. (*See* #1 ¶ 66); *see also Hortman v. Miamisburg*, 110 Ohio St.3d 194 (2006) (distinguishing equitable estoppel, which is based on factual representation, from promissory estoppel, which is based on a promise to do or refrain from doing something in the future). A common thread between the theories of equitable and promissory estoppel is inducement. In other words, for estoppel in either form to apply, plaintiff must, as a threshold matter, demonstrate that as a result of defendants' representation of fact or promise, he was induced to take an action that he otherwise would not have. The complaint fails to make such a showing with respect to the promise to repay the $150,000.00 investment (the promise attributable to the moving defendants). Thus, even assuming that Ms. Paladugu and Akshita promised to repay plaintiff's investment, nowhere is it alleged that plaintiff took any

further action as a result of this promise, and therefore he was not induced by it.[12] Count V should be dismissed as to Ms. Paladugu and Akshita.

B. <u>The Loan</u>.

Turning to the remainder of defendants' motion – seeking dismissal of claims premised on a violation of the terms of the Loan – the relevant claims are asserted solely against Mr. Paladugu. Mr. Paladugu moves to dismiss Count IX, unjust enrichment, and Count X, conversion.

1. <u>Choice of Law</u>.

A preliminary matter to be addressed is the law to be applied: the court has jurisdiction over these claims as a result of diversity of citizenship of the parties; defendants apply Ohio common law in their memorandum in support, (*see* #7), while plaintiff contends that Massachusetts law should govern these claims, (*see* #16 at 4-8). Unlike the Agreement, there is no choice of law provision in the Loan. "It is axiomatic that state substantive law must be applied by a federal court sitting in diversity jurisdiction. The question of which state's law applies is resolved using the choice of law analysis of the forum state—in this case, Massachusetts." *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004) (internal citation omitted).

---

[12] With respect to Mr. Paladugu's initial promise to invest properly plaintiff's investment into the partnership, the complaint does not allege that either Ms. Paladugu or Akshita were involved in the initial formation of the partnership, nor does it allege that Mr. Paladugu had the authority to bind either of the other defendants. Thus any promise made by Mr. Paladugu at that point has no bearing on the obligations of Ms. Paladugu or Akshita. Moreover, the complaint does not allege any promise or representation by Mr. Paladugu to induce plaintiff to invest beyond what is set forth in the Agreement. (*See* #1 (setting forth certain terms of and incorporating by reference and attachment the Agreement (#1-3 at 2-4).) Thus, any estoppel argument concerning Mr. Paladugu's promises that led to plaintiff's financial participation in the partnership is subsumed by plaintiff's breach of contract claim, Count I, and breach of fiduciary duty claim, Count VI, and need not be addressed.

The first step in the choice of law analysis is to determine whether an actual conflict exists between the substantive law of the interested jurisdictions, here, Massachusetts and Ohio. *See id.* The appropriate test to determine the existence of an actual conflict is whether the application of each state's substantive law would yield differing outcomes. *See AIG Prop. Cas. Co. v. Green*, No. CV 15-30111-MGM, 2016 WL 6637694, at *6 (D. Mass. Nov. 8, 2016).

a. <u>Unjust Enrichment</u>.

Plaintiff argues that Massachusetts law must apply to Count IX because there is a conflict between the law of Ohio and Massachusetts as applied to the facts of this case. (*See* #16 at 5-6.) However, the differing outcomes to which plaintiff refers – whether he may plead claims both in equity and at law, or not – results not from which state law is being applied, but rather the court applying it. As was made clear above in Section A. 2, federal courts applying state substantive law are bound by the Federal Rules of Civil Procedure, which allow a plaintiff to plead alternative and competing theories of recovery. *See* Fed. R. Civ. P. 8. When one scrutinizes the cases on which plaintiff relies in support of his position, it is evident that the differing outcomes are a product of the fact that plaintiff compares a case from an Ohio state court, (*see* #16 at 6), with cases from the First Circuit and District of Massachusetts, *see id.* at 5. In actuality, both Massachusetts and Ohio prohibit a plaintiff from pleading a competing theory of equitable recovery when there exists adequate remedy at law. *See*, *e.g.*, *Spears v. Miller*, 2006 Mass. App. Div. 151 (2006) ("When an adequate remedy at law exists, a plaintiff may not pursue a claim of unjust enrichment.") (internal citation omitted). Thus, contrary to plaintiff's argument, it does not matter whether Massachusetts or Ohio law applies.

b. <u>Conversion</u>.

As explained above in Section A. 3, under Ohio law, a claim for conversion cannot lie where the plaintiff and defendant are in a simple debtor and creditor relationship. Moreover, the party asserting a conversion claim must be able to show that the funds at issue remained identifiable throughout the transaction. Neither requirement exists under Massachusetts law.

Under Massachusetts law, "[m]oney may be the subject of conversion . . . [,] [and] [t]here is no requirement that the property be held in trust or escrow." *In re Hilson*, 448 Mass. 603, 611 (2007). So, under Massachusetts law an individual seeking to recoup funds tendered under the terms of a loan agreement may advance a claim of conversion. *See, e.g.*, *Penry v. Haese*, 76 Mass. App. Ct. 1126 (2010) (plaintiff brought conversion claim against defendants for their failure to comply with the terms of a loan agreement under which plaintiff loaned funds to defendant). Thus, applying Massachusetts law, plaintiff is free to pursue his claim for conversion, and a true conflict exists between the law of Ohio and Massachusetts with respect to the claim of conversion.

Given that a conflict exists, the next step is to apply the choice of law analysis of the forum state, that is, Massachusetts. *Reicher*, 360 F.3d at 5. Massachusetts courts apply "a functional choice of law approach that responds to the interests of the parties, the states involved, and the interstate system as a whole." *Id*. (citing *Bushkin Assocs., Inc. v. Raytheon Co*., 393 Mass. 622 (1985)) (further citation omitted). Massachusetts courts consider a variety of factors in choosing the applicable state law, including:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Courts also may take into account five parallel considerations:

(A) Predictability of results; (B) Maintenance of interstate and international order; (C) Simplification of the judicial task; (D) Advancement of the forum's governmental interests; [and] (E) Application of the better rule of law.

Moreover, the Massachusetts Supreme Judicial Court has stated that it 'feel[s] free . . . to borrow from any of the various lists to help focus . . . attention on the considerations particularly relevant to the case.'

*Reicher,* 360 F. 3d at 5 (alteration in original) (internal citation omitted).

Applying these factors to the facts alleged and arguments advanced by the parties concerning choice of law, the court will apply Massachusetts law to plaintiff's claims brought in connection with the Loan. Plaintiff is a resident of Massachusetts, Massachusetts is the forum state, and the application of Massachusetts law affords plaintiff the opportunity to pursue an avenue of relief that would otherwise be foreclosed under Ohio law. Notably, Mr. Paladugu's argument in support of applying Ohio law to matters concerning the Loan is limited to his residency in Ohio and that the Loan was notarized in Ohio, (*see* #7 at 2), both of which are offset by plaintiff's residence in Massachusetts and the fact that the Loan was also notarized in Massachusetts, (*see* #1-3 at 11).

### 2. Unjust Enrichment – Count IX.

Mr. Paladugu's sole argument in support of dismissal of Count IX is that Ohio law prohibits a plaintiff from pleading such a claim when there exists an express contract. (*See* #7 at 2-3.) As has been made clear, this argument misses the mark when made in federal court at the pleading stage.

A determination of unjust enrichment is one in which [c]onsiderations of equity and morality play a large part. A plaintiff asserting a claim for unjust enrichment must establish not only that the defendant received a benefit, but also that such a benefit was unjust, a quality that turns on the reasonable expectations of the parties. The injustice of the enrichment or detriment in quasi-contract equates

with the defeat of someone's reasonable expectations. The party seeking
restitution has the burden of proving its entitlement thereto.

*Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) (alteration in original) (internal citation and quotation marks omitted).

"To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value." *Infinity Fluids Corp. v. Gen. Dynamics Land Sys., Inc.*, No. CV 14-40089-TSH, 2016 WL 5660359, at *10 (D. Mass. Sept. 29, 2016). With respect to allegations pertaining to the Loan, the complaint makes a *prima facie* showing of unjust enrichment under Massachusetts law. Plaintiff conferred a benefit onto Mr. Paladugu in the form of the $150,000.00 loan; Mr. Paladugu had knowledge of the transaction; and Mr. Paladugu failed to repay the loan in accordance with the agreed-upon payment schedule. Thus, Count IX should not be dismissed.

### 3. Conversion – Count X.

The elements of a claim for conversion under Massachusetts law are:

(1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

*Sazerac Co., Inc. v. Smith*, No. CV 14-10053-JCB, 2015 WL 12697651, at *4 (D. Mass. Mar. 6, 2015) (internal citation omitted). Like his unjust enrichment argument, Mr. Paladugu's argument for dismissal of Count X is that it is prohibited under Ohio law. (*See* #7 at 5.) As was set forth in the court's choice of law analysis, Massachusetts has no such prohibition, so a plaintiff is free to bring a claim of conversion of funds pursuant to a loan agreement.

The complaint makes out a *prima facie* case of conversion with regard to Mr. Paladugu's alleged failure to repay the funds loaned to him by plaintiff. Plaintiff loaned $150,000.00 to Mr. Paladugu with the expectation that the loan would be repaid by July 2014; plaintiff, as a creditor on the loan, had an ownership interest in the funds at the time Mr. Paladugu breached the agreement; Mr. Paladugu's failure to repay the loan resulted in economic harm to plaintiff; and, in response to Mr. Paladugu's failure to repay the Loan, plaintiff unsuccessfully demanded repayment of the funds. Defendants' motion as it pertains to Count X should be denied.

## V. Conclusion.

For all of the reasons stated, I RECOMMEND that Defendants' Motion to Dismiss (#22) be ALLOWED in part and DENIED in part. Specifically, with respect to Count II, defendants' motion to dismiss should be denied; Count III, defendants' motion to dismiss should be allowed as to Ms. Paladugu and denied as to Akshita and Mr. Paladugu; Count IV, defendants' motion should be allowed and the claim dismissed in its entirety; Count V, defendants' motion should be allowed and the claim dismissed against Ms. Paladugu and Akshita; Count IX, defendant's motion should be denied; and Count X, defendant's motion should be denied.

## VI. Review by District Court Judge.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988);

*United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

<u>/s / M. Page Kelley</u>
M. Page Kelley
United States Magistrate Judge

May 1, 2017